Case number 21-3566 USA v. Ismail Salaam. Oral argument, 15 minutes per side. Mr. Schad for the appellate. Good afternoon, your honors, and may it please the court. I'm here this afternoon representing Ismail Salaam, who is a defendant in the court below, and I would like to reserve three minutes for rebuttal, if I may. Very well. Thank you. Your honors, I raised eight sprawling issues in my brief in this case, but I'd really just like to focus on one today, unless there are specific questions about any of the others. And I think the one that I really want to focus the court's attention on today is the public trial argument. And obviously the Sixth Amendment has specifically in it the right to a public trial. That right was violated in this case. That was a structural error in this case, and that requires that the case be remanded for a new trial. And counsel, you didn't object the first time that the district court closed the courtroom. So we would disagree that the defense did not object. If you take a look at page 1403, maybe before that, so there was a pretrial prior to the trial. And they discussed whether or not the courtroom should be closed, whether or not they should do something different with the video monitors so that the gallery couldn't see it. And the court basically took it under advisement at that time. So now we get to trial and it's on the first day of trial and the victim witness is ready to testify. And the government says something along the lines of, this is the witness that we talked about that we talked about closing the trial. The district court makes the statement to the government, are you saying that the adults in the courtroom can't hear what you're about to present? The government then retreats and says, no, we're okay with the court being open. Defense counsel then jumps in and says, we agree. So defense counsel made it very clear that they wanted the courtroom to be open. And it's on page ID 1403 of the first day of trial. The court then takes a three minute recess, comes back and says, by law I'm required to close the courtroom, call your witness. So our argument is that not that... And then there's no objection. Then there's no second objection. But there's no need in the law to object again once you've made your position known on the issue. That kind of rebuttal type of objection used to be in the law hundreds of years ago, but it went away with the rules of evidence. And there's a rule of evidence that specifically says you don't need to once again object once you've made your objection. And it would have been clear to the district court from what defense counsel said that they wanted the courtroom to be open and they didn't want it closed. So we feel that there was no lack of objection. There was in fact an objection. But let's even assume for the moment, taking the government's argument, that that amounts to a lack of objection. Well, two things about that. First, it doesn't amount to a waiver. So we've got issues in the law, waiver versus forfeiture, and there's a big difference between the two of them, right? The first one with a waiver is that you knowingly relinquish your right. In other words, judge, I know I could make this objection on this basis and I'm withdrawing it or I'm not making it or I'm not pursuing it any further. That is a waiver and that makes the matter unreviewable. But a failure to object is merely forfeiture which would push you into a plain error standard of review. We don't think it applies, but even if plain error does apply, we still win this issue because it is structural error. So if you take a look at the plain error standard, so you have to have an... Your argument is that it's structural error either way and it doesn't essentially matter whether you object or forfeit it. I think on direct review, we get a remand for a new trial even if there was no objection in the court below. Yes, that's our position. And I do that through the plain error standard. So the issue is, was there an error? Obviously there was an error. There was no basis under the law for the court to close the courtroom at that point. The witness was 18 years old, wasn't a minor. The evidence that they were going to put in front of that particular witness could have been handled in a dozen different ways that didn't require the public to be excluded from the courtroom. Just to interject, she was 18 years old at the time of the trial, but these images were taken at the time she was a minor? She was 16 years old. Yes, absolutely. And so there's two competing interests there, right? So if it was a minor and there was this problem with a minor testifying in an open courtroom, there's certain procedures for that. But that's not what we have here. Now we just are dealing with, are we going to show the gallery what might be considered child pornography? And there... So you're essentially arguing there's this sort of harm per se. I mean, the courtroom was closed just for the examination of the JB, we'll call her. I mean, do we, does the court also examine really the overall integrity of the trial, the fairness of the trial? Are those factors that should be examined? Not at all. Not in this case because it's structural. Because I think the problem here is if you accept the government's argument, you are doing away with structural error. Because now it's just plain error and now we always have to prove prejudice. And the court, the Supreme Court has said there are some errors that it's almost impossible to prove prejudice on, but they go to the core of what we know as a fair proceeding, right? And that's why the complete denial of counsel is something that we might not be able to point to and say, okay, we can show this and that prejudice. And a public trial is the same way. There's actually two parts to a public... If you get structural error, whether you object or you don't object, and I know you think you objected here, but take the hypothetical. Why would there be any incentive for defense counsel ever to object if they could later just come back and not key the district court judge, oh, no, we have a problem with this. And then later on they're going to come back and say, oh, no, it's structural error whether I objected or not. We get a new trial. Well, to answer your question, Your Honor, I think that the incentive is if you're trial counsel, you still want to win the case. And so there are things about a public trial that can be helpful to you to win the case. So in other words, let's take this specific witness as an example. You know, she might have been willing to say things in a closed courtroom that she was unwilling to say when the public's watching her and viewing her that might have then altered the trial itself. So there are incentives where a defense counsel would not sandbag intentionally. The other thing I'll say about this... Given the kind of intimidation against her testifying, wouldn't that cut against you? It could. It could cut against. It could cut forward. But that's the reason why this particular type of error has been deemed by the Supreme Court to be structural error because of the difficulty of the conversation that we're having this afternoon. So maybe we have to think about it as structural error. But if we don't, and if we feel bound by other cases in this court that have reviewed it under a more plain error standard, what is your argument on kind of the not error, was it plain prongs, but kind of the fairness of the trial as Judge Cole was asking you about it and the other factors we look at under the plain error review? And if I can answer that in two parts. First, as to those cases that you alluded to that put a plain error structure on it. First, those are all in a habeas setting. Every single one of those is in a habeas setting, not on direct review. And that's a big difference. And the difference is that in the habeas setting in the Johnson case and the Burke case, I believe it is, they argued it under ineffective assistance of counsel for failing to raise it as a claim. So then it fell under the two prong Strickland test. And that's why you get a different result than you would if it's structural error. None of those cases were on direct review. So that's kind of my first answer to that. But the second answer is that... But based on your argument that you would always get structural error, that it certainly would be prejudicial for counsel, or particularly appellate counsel, not to bring up even, I mean, and that would make your Strickland test. So let me put it in a different context and let me use the denial of counsel. So trial starts and counsel has to leave the courtroom because they are, you know, some emergency happens in their life, right? And we have a judge that says, well, we're going on. He'll be back in a while. And counsel doesn't come back for several hours. So now you've got the denial of counsel while direct examination and alleged cross-examinations going on. Should the defendant be expected to object to preserve that? Or are we going to consider that to be an error in the process that affects the entire proceedings? And again, it gets to if you accept the government's argument here, what you're doing is throwing away the concept of structural error. Structural error means that it's error no matter what because it's fundamental. And in this case, we had the most important government witness not be subject to a public trial. And that renders the entire proceeding unfair without me getting into specific instances of prejudice in this case. And that's why it's structural error. But again, if you look at it under the plain error analysis, was it error? Yes. Was it obvious? Well, we've got Waller and Presley, two Supreme Court cases that say, not only can you not do this, but if you do it, you have to do these four factors in order to do it. Right? So that's, it's an obvious error. So now we're down to did it fundamentally affect the proceedings? And structural error says, yes, this type of error automatically fundamentally affects the proceedings regardless of whether we can nitpick and find the lack of cross-examination or something like that. And that's why it's different in this case. I will grant you, I wish that trial counsel would have said something more. But trial counsel did let their position be known right before the court made its decision. And I think that's got to be enough to preserve it. If that's not enough, then the very next day they had another conversation with another witness and trial counsel did put it on the record at that point and said, we want our right to a public trial when they tried to do it again. So it was within the time period for the district court to fix it, certainly at that point. And that's all we ask when we're preserving error, right? We want the court to have the opportunity to fix it. The court had the opportunity to fix it here. See my time's up. Mr. Stroud, if it was structural error and this was the unusual and exceptional situation where the court could have considered closing the court to the public, it was seen that the error may have been exacerbated or compounded by the judge in failing to do what would be required if it were necessary to close the court, which is to say to make findings on the public record, on the court record as to why the court was being closed to the public. And as I understand, that wasn't done or wasn't done adequately. What do you have to say about that aspect? Absolutely, Your Honor. So, you know, had the court gone through the Waller factors, it would have been required amongst other things to say, here are the other reasonable alternatives that I tried to take to make sure that the gallery wasn't seeing the child pornography and this is why they don't work. And that's why, in kind of the second half of that point is, and that's why we can override this constitutional right that the defendant has. That's the important thing that's missing here. We had that right, it was overborne and it was overborne for absolutely no reason that was put on the record. The next day they tried to have a discussion about the reasons that it was put on the record and the government actually floated some ideas of why the court closed the courtroom, but the law clerk actually jumped in and said a few things on the record as, no, it was so that the gallery couldn't see child pornography. So if that's it, that's not enough to override the right to a public trial. Okay, you'll have your rebuttal. May it please the court, Alexis Zuhairi on behalf of the United States. I'd like to turn directly to the public trial right, since that's what my colleague focused on. We raised several arguments as to that issue, but today I do want to focus specifically on plain air review and the fourth prong of that standard, because I think that that prong presents the most straightforward basis for this court to resolve it. To start, and contrary to my colleague's suggestion, at a minimum, there was a forfeiture here. To preserve an issue on appeal, a party needs to affirmatively request that the court take an action or object specifically to the court's action. That's rule 51B, and the defendant did neither of those things here. I direct the court to record 149, 1403 and 04, the same pages that my colleague cited. That was right before the victim testified and then the victim's testimony, which is at record 95 and 114. Before the victim testified, the court did ask the government what it wanted to do about the gallery. The government said, given the makeup of the gallery, it was okay if the gallery remained. Defense counsel was then asked, defense counsel agreed. Now agreeing that you are okay with the gallery remaining in the courtroom is not the same thing as making a clear request that the court not close the courtroom. You know, this is being couched in terms of the rights of the defendant and whether or not the defendant forfeited or where he stands in relation to plain error review, but what about the right of the public to have a public trial? I mean, counsel doesn't seem to be in favor of a public trial. I mean, why would a public trial not be closed? That's true, your honor. I think in our view, the right of the public to attend the trial and the fact that they were excluded from this one small piece of the trial would be part of the analysis under the fourth prong, where this court looks to whether the error seriously affected the fairness, integrity, or public reputation of the proceedings. If I may return to why we believe that this issue was forfeited. So after that colloquy occurs, the district court leaves, comes back, says it's decided to close the courtroom because it believes that it's required to do so by law. The defense did not object. 1404, if the court wants to look at that page, the defense had ample opportunity to object there. Then the victim's testimony proceeds. These images aren't immediately displayed. The defense has an opportunity to object. Cross-examination, the defense has an opportunity to object. At no point during the entirety of this victim's testimony did the defense object. And the whole point of this contemporaneous objection rule, of course, is to give the district court an opportunity to correct a potential error and to correct an argument. And we submit that the district court had no opportunity to do that here. And that's illustrated by the fact that the next day, when the agent testifies and the defense does issue, does make an objection... Let me ask you this. Is it that important or necessary that there even be an objection in order to maintain the public nature of the trial? And I say that because the idea of trials being open to the public is so fundamental and uncontested that it would seem that you would need an objection from one side or the other for the district judge to be learned why would an objection even be necessary? Well, two responses, Your Honor. First, the Supreme Court has made clear that even when there is structural error, that plain error review does apply. So that implicates the importance of objecting. And plain error review applies if there's no objection. Can you imagine any circumstances where it might be reversible to close the trial even if there is no objection? Your Honor, if the courtroom here was closed and there were an objection, we would be conceding that that's reversible error. But that's just not the box that we're in today. We're in the plain error review box. And I point the court to... Yeah, but that wasn't my question. I was asking you if you can imagine any circumstances where it might be improper to close the trial in the absence of any objection. That was my question to you, not anything about plain error review. I think that there are certain statutes that permit the court to close the courtroom. For example, and we cited this in our brief 3509E, that statute allows for a complete closure of the courtroom where a minor is testifying and where that minor would suffer some sort of psychological harm. Do you think in this case, Ms. Uheri, if, say the trial court had somewhat sua sponte like here, closed the entirety of the trial when there are no images going on and irrespective of which witness was testifying, maybe that would be such an affront to the fundamental openness of our courtrooms and the fairness of that, that maybe that's a situation we're under pronged for, we would say. Even if there's no objection, this was plain error here. But here, given the kind of narrowness and the targetedness at the privacy interest of this young woman, that it doesn't kind of affect the fairness. I agree with Your Honor completely. That would be a very different situation if there was a pervasive closure and we didn't have the situation that we have here. And Your Honor touched on, you know, I did want to point out the purpose of closing the courtroom here, it was tied to a legitimate purpose. The court was trying to prevent the gallery from viewing these sexually explicit images of the minor or the now 18-year-old girl who was going to be testifying. Now, we agree that there was some sort of good faith oversight in implementing that, but the purpose for doing so was correct. I don't think that my colleague or anyone here today is going to suggest that it would have been proper for the gallery to view these images. And so, this isn't a case where the district court is acting in flagrant disregard of the public trial right. And that's important when we're under prong four. The purpose of the closure is important. We're looking at whether or not this error, we're in prong four. Okay, that means that there's been some sort of serious error. In this case, a structural error. But the Supreme Court... Let me ask you just a factual question. Was it the case that at some point the screens were turned to the jury for the jury to view without the gallery being able to see what was being shown? That's exactly right, Your Honor. So, after this victim testified, we had an agent testify. And this issue of the courtroom and how to display these images came up at that point. And in that situation, the defense did object. They objected specifically. They asserted the public trial right. And the district court, in response, did what it previously it seems didn't think that it could do. And that is it was able to try to display these images in a way that only the jury could see, preventing the gallery from viewing them. And from the government standpoint, if that objection had happened earlier, we might not be standing here today. And that's part of the reason that we have the plain error standard to prevent a situation like this from causing a reversal of a trial under these circumstances. The Supreme Court has said, I think in Weaver, maybe other cases, that you can have a closure that's deemed unlawful. But the issue still on plain error review is, you know, was the trial overall fundamentally fair to the defendant? That's exactly right, Judge Cole. And so I guess, I'd like to hear your thoughts on why this, on this record, the trial was fundamentally fair to this defendant? Sure, Your Honor. We rely on Weaver heavily in our brief, as you know. And Weaver makes clear that even when there is a courtroom closure, the defendant, from the defendant's standpoint, can still receive a fundamentally fair trial. And that's absolutely what happened here. To start, aside from the violation of the right itself, my colleague points to no unfairness that occurred. We have a situation where a defendant was found guilty by an impartial jury. There was overwhelming evidence. There's no indication that the public's presence would have affected any part of the trial. And the same neutrality, professionalism, objectivity, all of these values that the public trial right is seeking to protect, all of those things happened when the courtroom was closed and when the courtroom was open. Yeah, but, you know, your opponent's argument is that J.B. was the most important witness, as he argues, and that she may have testified differently if the courtroom is open to the sort of limited closure. And that, in and of itself, is what makes this trial unfair. A few responses. First, that's speculative. We have no idea what would have occurred, and there's no indication in the record, certainly, that her testimony would have been different. The defense had a full opportunity to vigorously cross-exam the victim, and they did that. They didn't object at any point to the gallery not being present anymore. And, you know, perhaps most importantly, the victim's testimony here was independently corroborated by other evidence that was introduced throughout the trial. I'm talking about hotel records, text messages, the defendant's voice that was on these videos and that she was able to identify. And so some of that evidence even came in through other witnesses. So I hope that's responsive to the judge's question.  Okay. I suppose the last case-specific circumstance that the court, we think, should consider here, and it's one that the Supreme Court's emphasized, is the cost of correcting the error. And I alluded to this before, but the Supreme Court has been clear that a high degree of caution should be exercised before a court reverses on plain error review. And a retrial here would require significant resources. It would entail significant risk. But a particularly concerning cost to the government, and a cost that I think this court needs to consider under the fourth prong, is the cost to the victim in this case. Yes, sir. Harry, before you're out of time, if it's okay with my colleagues, can I change the topic? Can I ask you about the sentence here? Sure. My understanding was that when the district court judge sentenced here, there was an enhancement for like an undue influence of the minor, which gives a two-level enhancement. And that the district court here applied the rebuttable presumption that which is in the guidelines commentary to say if the defendant is 10 years older than a minor, we kind of presume undue influence. That's in the commentary. Should we be worried at all about relying on the commentary as ultra vires here of the guidelines? I mean, this is not something that went through notice and comment and was approved by Congress. This is like the commission writes this in, and it can have a big impact on a sentence. Sure. Your Honor, first response, of course, is that unless this court finds all three enhancements improperly applied, that any error as to one or even two would be harmless. But addressing your specific question, I don't think there's a HAVIS problem here. I think that the presumption in this case is an interpretation of the language. It's not in addition to. But as we argue in our brief, even if this presumption doesn't apply, we believe that the record would support application of this enhancement, irrespective of whether or not there's a presumption. If the court has no further questions, we ask that the defendant's conviction and sentence be affirmed. Thank you. Any rebuttal? Thank you, Your Honor. I just want to emphasize that I don't want this court to come away with the impression that we are at all conceding that plain error review can apply. Weaver v. Massachusetts does not say plain error analysis goes with the closure of a courtroom. What it says is in the HAVIS context, when it's raised in an ineffective assistance of counsel setting, then plain error review applies. And I'd like to quote from Weaver. This is on page 290. In the direct review context, which is where we're at, the underlying constitutional violation, the courtroom closure has been treated by this court as a structural error, an error entitling the defendant to an automatic reversal without any inquiry into prejudice. The question is whether the invalidation of the conviction is required here as well. And then goes on to talk about the HAVIS setting. This is direct review. This is not a HAVIS setting. There is no case that the government has cited you to that says on direct review this automatically flips over to a plain error review standard. And again, I think that if you go down that path, you're getting rid of structural error as an analysis altogether. The other thing I would say is that my friend counsel admitted that there was a way to fix this without violating the Constitution. And it was, in fact, fixed the next day. They could have just turned off a couple monitors and there wouldn't be this issue. But I'm going to disagree that the record shows that there was all this ability to throw in another objection after defense counsel had already said that they wanted the courtroom to be open in direct response to what the government said. And then the court comes back in and says I'm required by law to close the courtroom. They could have probably started yelling at the court, but that's not always possible in real life and in the setting of a trial. So for all these reasons as well as those that I've put in my brief, just ask that you reverse this matter for a new trial. Judge, I didn't know if you had any questions about the guidelines issue on my end. Thank you. Thank you. And the case is submitted.